UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VERNON BRET PADGETT,

*Plaintiff*,

v.

BROOKE L. ROLLINS, *et al.*,

*Defendants*.

Civil Action No. 24 - 2425 (LLA)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vernon Bret Padgett brings this suit against Brooke L. Rollins, in her official capacity as Secretary of Agriculture, and the Animal and Plant Health Inspection Service ("APHIS"). ECF No. 13.[1] He alleges that Defendants acted arbitrarily, capriciously, contrary to law, and in excess of their statutory authority, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, by euthanizing his twenty-two Abyssinian ground hornbills that were exposed to Avian Paramyxovirus-1. ECF No. 13. Defendants move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 16. For the reasons explained below, the court grants in part and denies in part Defendants' motion.

I.      BACKGROUND

The court draws the following facts, accepted as true, from Mr. Padgett's amended complaint. *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Mr. Padgett owns and operates a small business that imports birds. ECF No. 13 ¶ 1. In

---

[1] Because this is an official-capacity suit, Secretary Rollins is automatically substituted in for her predecessor under Federal Rule of Civil Procedure 25(d).

August 2024, he attempted to import twenty-two Abyssinian ground hornbills into the United States. *Id.* ¶ 13. APHIS tested a representative sample of the hornbills for diseases and found that five birds had tested positive for Avian Paramyxovirus-1, which is a highly contagious and often fatal disease. ECF No. 5-3; ECF No. 10-1 ¶ 10. APHIS concluded that the remaining birds had also been exposed to the disease and notified Mr. Padgett that he had two options: (1) export the hornbills out of the country; or (2) have the birds humanely euthanized by APHIS. ECF No. 5 ¶¶ 11, 22.

Mr. Padgett declined both options and initiated this civil action on August 21. ECF No. 1. The following day, he filed a Temporary Restraining Order ("TRO") requesting that the court enjoin Defendants from euthanizing the seventeen hornbills that had not tested positive for Avian Paramyxovirus-1. ECF No. 5. The court issued an administrative stay during which Defendants were ordered to maintain the healthy birds in quarantine and refrain from euthanizing them. ECF No. 8. After the TRO was fully briefed and a hearing was held, the court denied Mr. Padgett's request for a TRO and lifted the administrative stay. ECF No. 12. Soon thereafter, Mr. Padgett was informed by APHIS: "All 22 hornbills have been euthanized and incinerated." ECF No. 13 ¶ 24.

In November 2024, Mr. Padgett amended his complaint, alleging that the imposition of fees for testing, holding, and euthanizing the birds, as well as the failure to provide an additional quarantine for the birds, was arbitrary and capricious, contrary to law, and in excess of statutory authority, all in violation of the APA. ECF No. 13 ¶¶ 25-50. As relief, Mr. Padgett requests return of the fees charged, compensation for the loss of the healthy birds, and attorney's fees and costs. *Id.* at 9.

Defendants move to dismiss Mr. Padgett's amended complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 16. They argue that the APA does not waive the United States' sovereign immunity for suits for monetary relief. ECF No. 16-1, at 4. The motion has been fully briefed and is ripe for disposition. ECF Nos. 16 to 18.

## II.  LEGAL STANDARD

"Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is appropriate if a claim is barred by sovereign immunity." *Groce v. Rodriguez*, 743 F. Supp. 3d 244, 248 (D.D.C. 2024). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Id.* (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The plaintiff "bears the burden of establishing that sovereign immunity has been abrogated." *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012).

In reviewing a motion to dismiss under Rule 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

## III.  DISCUSSION

In his amended complaint, Mr. Padgett seeks two categories of relief: (1) compensation "for [the] loss of healthy birds"; and (2) reimbursement of fees related to his reservation fee, the cost of testing, and the cost of euthanasia. ECF No. 13, at 9. In seeking dismissal, Defendants argue that Mr. Padgett is seeking money damages and that the United States has only waived its sovereign immunity under the APA for suits seeking non-monetary relief. Mr. Padgett disputes the characterization of his suit as one for money damages, claiming that he is instead seeking equitable relief in the form of restitution. The court determines that Mr. Padgett is seeking both

money damages (compensation for the euthanization of his birds) and equitable relief (a refund of fees paid to APHIS), and it concludes that, while sovereign immunity bars his claim for money damages, Mr. Padgett may proceed with his request for equitable relief.

The central question before the court is whether the APA provides the necessary waiver of sovereign immunity to allow Mr. Padgett's claims to proceed.  Section 702 of the APA contains a waiver of sovereign immunity applicable to any claim "seeking relief other than money damages." 5 U.S.C. § 702.  *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) ("Via the APA, the Congress has provided a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages[.]'" (quoting 5 U.S.C. § 702)).  The distinction between "money damages" and "non-monetary relief" turns on whether the relief is (a) "compensatory, or substitute," or (b) "specific."  *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261-62 (1999).  Compensatory, or substitute, relief "normally refers to a sum of money used as compensatory relief," while specific relief "attempt[s] to give the plaintiff the very thing to which he was entitled."  *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)).

Here, the parties dispute whether the relief sought is better categorized as "money damages" or "restitution."  ECF No. 16-1, at 4; ECF No. 17, at 5.  Defendants contend that Mr. Padgett "fundamentally seeks . . . compensation for losses stemming from the government's decision to destroy his birds."  ECF No. 18, at 4 (internal quotation marks omitted) (quoting *Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, No. 21-CV-3184, 2023 WL 10669678, at *4 (D.D.C. Mar. 21, 2023)).    Mr. Padgett counters that he requests restitution—"merely a disgorgement of ill-gotten gains." ECF No. 17, at 5 (emphasis omitted) (quoting *Crude Co. v.*

4

*Fed. Energy Regul. Comm'n*, 923 F. Supp. 222, 234 (D.D.C. 1996)). As noted, the court concludes that Defendants are correct with regard to Mr. Padgett's request for compensation for the euthanized birds, but that Mr. Padgett is correct with regard to his request that he be reimbursed for fees he contends were illegally charged.

The court can quickly dispense with Mr. Padgett's request for compensation "for [the] loss of [the] healthy birds." ECF No. 13, at 9. This request for money damages is a quintessential request for compensatory relief—that is, "an award given to a plaintiff as a substitute for that which has been lost." *Am.'s Cmty. Bankers v. Fed. Deposit Ins. Corp.*, 200 F.3d 822 (D.C. Cir. 2000). The APA has not waived the United States' sovereign immunity for such a request. *See* 5 U.S.C § 702.[2]

As it concerns Mr. Padgett's request for reimbursement of fees he incurred while his birds were in quarantine and for their euthanasia, the issue is controlled by *Bowen* and *America's Community Bankers*. In *Bowen*, Massachusetts brought an enforcement suit, based on Section 1396b(a) of the Medicare Act, requesting that the Department of Health and Human Services ("HHS") pay states for specific Medicaid expenses. 487 U.S. at 891. HHS challenged the district court's jurisdiction under the APA, arguing that such reimbursements were money damages. *Id.* at 891, 893. The Supreme Court determined that the reimbursements qualified as equitable remedies and, thus, the district court had jurisdiction over Massachusetts's claims. *Id.* at 900-01.

In *America's Community Bankers*, the D.C. Circuit built on *Bowen*. In that case, a trade association of banks and savings institutions challenged an assessment that the Federal Deposit

---

[2] In any event, such a claim would fail on the merits. *See* 7 U.S.C. § 8306(d)(3)(C) (forbidding the Secretary of Agriculture from offering compensation for "any animal . . . that is refused entry" into the United States).

Insurance Corporation ("FDIC") had levied. 200 F.3d at 825. The plaintiff argued that the FDIC had overcharged its members and sought to "get their money back." *Id.* at 830. The FDIC contested the court's jurisdiction to hear the matter, claiming that the plaintiff was seeking money damages. *Id.* at 829-31. The D.C. Circuit concluded that if "the FDIC [had] improperly collected money from [the banks], . . . they are entitled under the statutory scheme to get their money back." *Id.* at 830. Thus, "the remedy sought by [the plaintiff] d[id] not constitute money damages," but rather specific relief, and the court had "power under [the APA] to consider the merits of [the plaintiff]'s claim." *Id.* at 831.

In keeping with *Bowen* and *America's Community Bankers*, many courts in this district have allowed cases to proceed under the APA where the plaintiff seeks the return of a fee charged by a federal agency. *See, e.g.*, *Astakhov v. U.S. Citizenship & Immigr. Servs.*, 698 F. Supp. 3d 135, 144 (D.D.C. 2023) (holding that the court had jurisdiction to hear the plaintiffs' APA suit seeking a refund of a fee imposed by U.S. Citizenship and Immigration Services); *Steele v. United States*, 200 F. Supp. 3d 217, 225 (D.D.C. 2016) (holding that the court had jurisdiction to hear the plaintiffs' APA suit seeking a refund of a fee imposed by the Internal Revenue Service); *Resolute Forest Products, Inc. v. Dep't of Agric.*, 219 F. Supp. 3d 69, 74-78 (D.D.C. 2016) (holding that the court had jurisdiction to hear the plaintiff's APA suit seeking a refund of fees imposed by the Department of Agriculture). *But see ITServe Alliance, Inc. v. Cucinelli*, 502 F. Supp. 3d 278, 287 (D.D.C. 2020) (holding that the court lacked jurisdiction to hear the plaintiff's APA suit seeking a refund of fees imposed by U.S. Citizenship and Immigration Services).

In arguing for a contrary result, Defendants urge the court to read *Bowen* and *America's Community Bankers* as being limited to cases in which the statutory scheme at issue entitled the plaintiff to a refund. ECF No. 18, at 2-3. In other words, Defendants argue that Mr. Padgett must

6

point to a statutory provision that authorizes refunds for the fees that APHIS charged or that requires APHIS to pay back such fees. But that is not how courts have interpreted *Bowen* and *America's Community Bankers*. Instead, the question is whether "an agency assessed [the plaintiff] a fee in excess of its statutory authority," in which case, the plaintiff is "legally entitled to restitution of the fee [he] paid." *Astakhov*, 698 F. Supp. 3d at 142. Here, Mr. Padgett points to fees that were assessed under various regulations, and he contends that they were assessed in excess of APHIS's regulatory authority. ECF No. 13 ¶¶ 25, 29-32, 34-37, 40-43, 46-49. The court finds this sufficient, at this stage of the litigation, to assure itself of jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 16, is **GRANTED** in part and **DENIED** in part. Any claims seeking compensation for the loss of the healthy birds are **DISMISSED**, but Mr. Padgett's claims seeking a refund of fees charged by APHIS may proceed. It is further

**ORDERED** that Defendants shall respond to the Amended Complaint on or before August 27, 2025.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 13, 2025

7